UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OIL COM UGANDA and ISLAM
EDHA ABDALLAH NAHDI,

      Plaintiffs,

v.                              Case No:  2:21-cv-916-JES-NPM

ESTATE OF BRUWER WESSEL VAN
TONDER,

      Defendant.

_____

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on plaintiffs' Motion for Preliminary Injunction (Doc. #9), to which defendant responded (Doc. #14).  For the reasons set forth, the motion is **DENIED**.

**I.**

The following facts, taken from plaintiffs' motion, serve as the basis for the request for preliminary relief:[1]  On January 18, 2013, plaintiff Oil Com Uganda (OCU), plaintiff Islam Edha Abdallah Nahdi (Nahdi) (collectively, plaintiffs), and decedent Bruwer Wessel Van Tonder (Mr. Van Tonder) executed a Shareholders Agreement related to the ownership of Algae-X International

---

[1] The facts alleged in, and exhibits attached to, the Amended Complaint and the Verified Motion for Preliminary Injunction (Motion) are, for the most part, the same.  (<u>Compare</u> Doc. #5, ¶¶ 6-48 <u>with</u> Doc. #9, ¶¶ 4-41.)  The Estate disputes most of the facts.

Corporation (AXI).[2]  (Doc. #9, ¶ 9; Doc. #9-2.)  Nahdi signed the agreement on behalf of himself and OCU.  (Doc. #9-2, p. 3.)  Nahdi was named President and a director of AXI; Mr. Van Tonder was named CEO and a director of AXI.  (Doc. #9, ¶ 12.)  It is undisputed that, on August 1, 2013, the ownership structure of AXI was the following: 51% to OCU, 9% to Nahdi, and 40% to Mr. Van Tonder. (Id. ¶¶ 14-15; Doc. #13, ¶¶ 14-15.)

**A.  Actions taken by Mr. Van Tonder**

Plaintiffs allege that "between 2016 and 2017, Mr. Van Tonder represented to OCU and NAHDI that Chase Bank was requiring NAHDI's name to be removed from the AXI corporate bank accounts because he is a foreign national and because he is Muslim," and that OCU and Nahdi needed to be removed "from public corporate records and as a signatory to the bank account so Chase Bank would continue doing business with AXI." (Doc. #9, ¶¶ 18-19.)  Plaintiffs agreed to be removed from the bank account and public records, but understood that they would maintain their same ownership interest in AXI. (Id. ¶¶ 22, 24.)

On October 1, 2017, Mr. Van Tonder executed a Unanimous Written Consent of the Board of Directors of AXI International ("Written Consent"), allegedly without Nahdi's knowledge, which

---

[2] On March 8, 2013, "Algae-X International Corporation" changed its name to "AXI International Corporation." (Doc. #9, ¶ 13.)

removed Nahdi from the board of directors and terminated Nadhi's power in the company.  (Id. ¶ 25; Doc. #9-12.)  The Written Consent authorized Mr. Van Tonder and Michael Campbell (Campbell), Secretary of AXI,[3] to "take any and all necessary actions to effectuate this resolution."  (Doc. #9-12).  Although there is a signature from Nahdi on the Written Consent, plaintiffs state that the signature is a forgery.  (Doc. #9, ¶ 26.)  Plaintiffs allege that after the Written Consent was executed, Mr. Van Tonder "caused a new corporate book to be created," "removed the original share certificates," and "had a brand new share certificate issued showing newly issued 200,000 shares (full ownership) of AXI to him alone."  (Id. ¶ 30.)

From 2013 when the parties purchased AXI until 2018, plaintiffs transferred approximately $5.95 million USD to Mr. Van Tonder's personal bank account for investment into AXI.  (Id. ¶¶ 33-34.)  According to plaintiffs, Mr. Van Tonder did not invest the money into AXI and, as they later learned, instead used the money for personal expenses.  (Id. ¶ 38.)

**B.  Mr. Van Tonder's Death**

On September 26, 2021, Mr. Van Tonder committed suicide.  (Id. ¶ 42.)  Relevant to this case, Mr. Van Tonder's will provided:

---

[3] It is unclear from the Written Consent whether Campbell served as CFO in 2017, however, later documents show that Campbell also is/was CFO of AXI.  (E.g., Doc. #14-1, p. 2.)

> In the case of my death, I wish the following:
>
> That Islam Edha Abdallah Nahdi inherit AXI International Corporation on the following conditions.
>
> -That my spouse, Michelle Marie Van Tonder, must be paid 2 million dollars.
>
> -AXI International must pay her a salary of $120,000.00 every year for a total of five years including healthcare.
>
> -My home on, 3371 Brantley Oaks Drive, Fort Myers Florida, 33905, must be paid off in full between Islam Edha Abdallah and my loan account in AXI International Corporation.
>
> -The Mercedes G 63AMG will go to my spouse, Michelle Marie Van Tonder.
>
> -Whenever AXI International gets sold, 10% of purchase price is to be paid to my spouse, Michelle Marie Van Tonder.

(Doc. #9-16, p. 7.)  The will was signed on March 11, 2020 and witnessed by Campbell and Camille Henry, another person associated with AXI.  (Id. pp. 5-7.)  On December 10, 2021, the will was admitted to the Lee County Circuit Court Probate Division, and Michelle Marie Van Tonder (Mrs. Van Tonder) was appointed as personal representative of the Estate.  (Doc. #9-16.)[4]

On January 3, 2022, Mrs. Van Tonder executed a shareholder's resolution, as personal representative of the Estate, which

---

[4] Plaintiffs state that, prior to admitting the will, Mrs. Van Tonder sent a waiver to Nahdi, requesting that Nahdi acknowledge that Mr. Van Tonder was the sole owner of AXI.  (Doc. #9-17.)  Plaintiffs do not, however, provide an actual date when the waiver was sent.

appointed Mrs. Van Tonder as president of AXI.  (Doc. #9-19.)  On
January 20, 2022, plaintiffs executed a similar resolution, naming
Nahdi  president  and  asserting  OCU  and  Nahdi's  60%  ownership
interest in AXI.  (Doc. #14-1, pp. 4-5.)  Plaintiffs' counsel sent
the resolution to Ronald Nisonson (Nisonson), corporate counsel
for AXI, and instructed Nisonson that Mrs. Van Tonder's resolution
"should have no effect whatsoever."  (Id. p. 3.)  On January 21,
2022,  Nisonson  sent  Nadhi's  resolution  to  Mrs.  Van  Tonder's
counsel.  (Id. p. 2.)  Nisonson informed Mrs. Van Tonder's counsel
that he instructed Campbell to revoke Mrs. Van Tonder's resolution
and enforce Nahdi's resolution.  (Id.)

On February 4, 2022, Mrs. Van Tonder's counsel sent Nisonson
an email, which purported to terminate Nisonson's representation
of AXI and instructed him to preserve ESI.  (Doc. #16-1.)  On
February 11, 2022, Mrs. Van Tonder's counsel sent Campbell a notice
of termination of his employment with AXI based on Campbell's: (1)
refusal to recognize Mrs. Van Tonder's authority; (2) ignoring his
past  sworn  statements  and  prior  acknowledgements;  and  (3)
unilaterally recognizing and taking direction for a third party.
(Doc. #16-2.)

**C.   Current Litigation**

Plaintiffs initiated this action on December 7, 2021 (Doc.
#1) and filed the operative Amended Complaint on December 11, 2021
(Doc. #5).  Plaintiffs assert eight counts against the Estate of

Bruwer Wessel Van Tonder (the Estate): (1) fraud; (2) breach of fiduciary duty; (3) conversion; (4) constructive trust; (5) unjust enrichment; (6) accounting; (7) permanent injunction; and (8) declaratory judgment.  (Doc. #5.)

The Estate filed a waiver of service on January 24, 2022. (Doc. #8.)  The next day, plaintiffs filed the pending Motion.[5] (Doc. #9.)[6]  On February 4, 2022, the Estate answered the Amended Complaint and responded to the Motion.  (Docs. ## 13, 14.)

Given the parties' filings, the Court ordered plaintiffs: (i) to provide briefing on whether the probate exception applied to this Court's jurisdiction; and (ii) to provide a proposed order for the preliminary injunction.  (Doc. #15.)  The Court also afforded the Estate the opportunity to respond to plaintiffs' filing.  (Id.)  Plaintiffs filed the requested documents.  (Doc. #16.)  The Estate filed no response, and the time for filing a response has passed.

**II.**

Federal courts "have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'"  Ambrosia Coal & Constr. Co. v. Pages Morales, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting

---

[5] See fn. 1.

[6] Plaintiffs supplemented the Motion with a verification, signed by Nahdi, which declares that the facts as stated in the motion are true based on personal knowledge.  (Doc. #10-1.)

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  One exception to this rule "is that a federal court may not exercise diversity jurisdiction over state probate matters." *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1356 (11th Cir. 2021).  This so-called "probate exception" is narrow and applies to cases that require a federal court to: (1) probate or annul a will; (2) administer a decedent's estate; or (3) dispose of property that is in the custody of the state probate court.  *Id.* (citing *Marshall v. Marshall*, 547 U.S. 293, 311 (2006); *Markham v. Allen*, 326 U.S. 490, 494 (1946)).  "The exception does not 'bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.'" *Stuart v. Hatcher*, 757 F. App'x 807, 809 (11th Cir. 2018) (quoting *Marshall*, 547 U.S. at 311).

"The general rule in determining whether a claim falls under the probate exception is whether a particular claim and the relief it seeks [] *interfere* with the property that is in the possession of a state probate court." *Catano v. Capuano*, No. 18-20223-CIV, 2020 WL 639406, at *3 (S.D. Fla. Feb. 11, 2020) (citing *Markham*, 326 U.S. at 494) (emphasis in original).  "District courts in the Eleventh Circuit have no jurisdiction over actions seeking a valuation of estate assets, a transfer of property that is under probate, or a premature accounting of an estate still in probate." *Id.* (citations omitted).  On the other hand, "federal courts can

adjudicate claims relating to state-court probate or estate cases so long as adjudicating the claim does not require the federal court to interfere with the property under the control of the state court." Id. (citing Markham, 326 U.S. at 494). For example, "'a creditor may obtain a federal judgment that he has a valid claim against the estate for one thousand dollars ... What the federal court may not do, however, is to order payment of the creditor's thousand dollars, because that would be an assumption of control over property under probate.'" Id. (quoting Turton v. Turton, 644 F.2d 344, 348 (5th Cir. 1981) ("the federal court is limited to declaring the validity of the asserted claims, leaving the claimants to assert their federal judgments as res judicata in the probate court")). The ultimate "question under this most mysterious and esoteric branch of the law of federal jurisdiction is what a lawsuit would require a district court to do." Fisher, 2 F.4th at 1356 (quotation omitted).

Based on the information available so far,[7] the Court is satisfied that the probate exception at least does not apply to plaintiffs' claims for fraud (Count I) and breach of fiduciary duty (Count II). These claims seek money damages for Mr. Van Tonder's allegedly wrongful actions and are a focus of plaintiffs'

---

[7] Subject-matter jurisdiction is always a live issue, Fed. R. Civ. P. 12(h)(3), and additional facts may later show that the Court lacks jurisdiction over some or all of plaintiffs' claims.

motion for preliminary injunction.  A federal judgment in plaintiffs' favor on these claims would not interfere with the state probate court proceedings.  In other words, if plaintiffs are successful on these claims, plaintiffs will obtain a federal court judgment "declaring the validity of the asserted claims," and would be left to "assert their federal judgment as res judicata in the probate court."  Turton, 644 F.2d at 347.

### III.

### A.

"A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest.  Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014) (citing Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001)).  "The first two factors are 'the most critical.'"  State of Fla. v. Dep't of Health & Hum. Servs., 19 F.4th 1271, 1279 (11th Cir. 2021) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).  Because the movant "must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms" the motion.  Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1248 (11th Cir. 2016).

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to each of the four prerequisites. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). "A preliminary injunction is typically prohibitive in nature and seeks simply to maintain the status quo pending a resolution of the merits of the case." Pritchard v. Fla. High Sch. Athletic Ass'n, Inc., 371 F. Supp. 3d 1081, 1085 (M.D. Fla. 2019). "When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes a 'mandatory or affirmative injunction' and the burden on the moving party increases." Haddad v. Arnold, 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010) (quoting Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971)).[8] "Indeed, a mandatory injunction should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." Id. (collecting cases).

Plaintiffs seek to enjoin the Estate and Mrs. Van Tonder from "exercising any control over [AXI], its finances[,] or its personnel." (Doc. #16-3, p. 12.) The Estate argues this is a

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

mandatory injunction, so plaintiffs must be held to a heightened burden. (Doc. #14, pp. 3-4.) Plaintiffs argue this would simply maintain the "status quo" because it puts the parties in the "'last uncontested status which proceeded the pending controversy.'" (Doc. #9, p. 10 (quoting <u>Boire v. Pilot Freight Carriers, Inc.</u>, 515 F.2d 1185, 1194 (5th Cir. 1975).)[9]

The Court concludes that plaintiffs seek a mandatory injunction. "There is no 'particular magic in the phrase "status quo,"' and the purpose of a preliminary injunction is 'to preserve the court's ability to render a meaningful decision on the merits.'" <u>United States v. Stinson</u>, 661 F. App'x 945, 952 (11th Cir. 2016) (quoting <u>Canal Auth. of State of Fla. v. Callaway</u>, 489 F.2d 567, 576 (5th Cir. 1974)). Plaintiffs are, in essence, asking the Court to give them complete control of AXI. But the "status quo" from October 2017 until the present has been AXI under Mr. Van Tonder's control. Nevertheless, it is unnecessary to apply a heightened burden because, as explained below, plaintiffs fail to establish that they are entitled to the extraordinary and drastic remedy plaintiffs seek.

---

[9] <u>Boire</u> involved an injunction under the Taft–Hartley Act, which is not at issue in this case.

**B.**

**(1) Irreparable Harm**

"Irreparable harm is the 'sine qua non of injunctive relief.'" Oscar Ins. Co. of Fla. v. Blue Cross & Blue Shield of Fla., Inc., 360 F. Supp. 3d 1278, 1284 (M.D. Fla. 2019) (quoting Siegel, 234 F.3d at 1176). "Importantly, the possibility of an irreparable injury is not enough." State of Fla., 19 F.4th at 1279 (citing Winter v. NRDC, 555 U.S. 7 (2008) (explaining that issuing a preliminary injunction "based only on a possibility of irreparable harm" would be "inconsistent" with treating a preliminary injunction as a an "extraordinary remedy")). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Siegel, 234 F.3d at 1176 (citations omitted).

Plaintiffs' irreparable injuries are purely speculative. Plaintiffs, in a conclusory fashion, argue that they will be irreparably harmed if "[the Estate] and MRS. VAN TONDER are permitted to interfere with the day-to-day operations of AXI." (Doc. #9, p. 15.) Plaintiffs also state, when responding to the Court's Order requesting briefing on jurisdiction, that their harm is imminent because "Defendant has attempted to terminate AXI's corporate counsel, Ronald S. Nisonson, and AXI's CFO, Michael Campbell." (Doc. #16, ¶ 7.) Plaintiffs, however, provide no evidence of the actual or imminent harm they will face. Even if

Mrs. Van Tonder became involved in AXI, there is nothing in the record demonstrating that Mrs. Van Tonder would mismanage corporate funds or threaten the livelihood of the company.

Even if Mrs. Van Tonder became an officer or director of AXI, she would owe a fiduciary duty to the corporation and its shareholders. Chur v. Eighth Jud. Dist. Ct. in & for Cty. of Clark, 458 P.3d 336, 340 (Nev. 2020); In re Aqua Clear Techs., Inc., 361 B.R. 567, 575 (Bankr. S.D. Fla. 2007) (citing Cohen v. Hattaway, 595 So.2d 105 (Fla. 5th DCA 1992)).[10] If Mrs. Van Tonder mismanaged the company – and plaintiffs prove that they have an ownership interest in AXI – plaintiffs would be able to seek compensatory damages against Mrs. Van Tonder for that mismanagement. Oscar Ins. Co., 360 F. Supp. 3d at 1284 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)) ("'The possibility that adequate compensatory ... relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'").

---

[10] Neither party discusses choice of law, but both parties apply Florida law in their briefing. "The Florida Business Corporation Act provides that the internal affairs of a corporation are governed by the laws of the state of incorporation." Mukamal v. Bakes, 378 Fed. App'x. 890, 896 (11th Cir. 2010) (citing Fla. Stat. § 607.15015(3)). Based on the pleadings, AXI is a Nevada corporation. However, because plaintiffs fail to carry their burden of persuasion for equitable relief, the Court makes no determination at this time what state law applies to each of plaintiffs' claims.

Additionally, construing the factual statements in the Motion as true, Mr. Van Tonder fraudulently took 100% ownership interest in AXI on October 1, 2017. Even with the fraudulent takeover of the shares, plaintiffs acknowledge that they agreed to be taken off the corporate record books and corporate public records. Plaintiffs fail to demonstrate how they will be irreparably harmed now if an injunction is not granted, compared to their status in AXI over the past four years. For example, there is nothing in the record that demonstrates that plaintiffs were controlling day-to-day decisions in AXI since 2017, and that would now stop if Mrs. Van Tonder took over control. There is nothing in the record that demonstrates that plaintiffs were receiving shareholder distributions since 2017, and that would now stop if Mrs. Van Tonder took over control. Plaintiffs simply fail to demonstrate any immediate and actual irreparable harm.

**(2)   Substantial Likelihood of Success on the Merits**

Because plaintiffs fail to demonstrate irreparable harm, their request for injunctive relief fails. The Court will, however, briefly discuss the other most critical factor: likelihood of success on the merits. State of Fla., 19 F.4th at 1279 (quoting Nken, 556 U.S. at 434) ("It is not enough that the chance of success on the merits be better than negligible.")

Plaintiffs' motion focuses on their likelihood of success on the merits of their fraud, breach of fiduciary duty, conversion,

14

and constructive trust claims.   Much like irreparable harm, plaintiffs fail to make any showing that they are substantially likely to succeed on any of these claims.

For their fraud claim, plaintiffs argue that they are substantially likely to succeed on the merits because plaintiffs "allege[d] facts with sufficient particularity as to the false statements and misrepresentation made by TONDER."[11]   (Doc. #9, p. 11).   But, specific allegations of fraud are the minimum requirements, Fed. R. Civ. P. 9(b), and plaintiffs' allegations are not enough to support injunctive relief.  Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 777 F.2d 598, 608 (11th Cir. 1985) ("The record is devoid of any evidence indicating that this plaintiff established a right to an injunction. …[Plaintiff] would have us hold that it was entitled to preliminary injunctive relief as a matter of law solely on the basis of its naked allegations.")

Plaintiffs fail to provide or cite to anything in the record to support their naked allegations of fraud.   Plaintiffs provide no declaration or documents tending to establish the "who, what, when, where, and how," of their underlying fraud claim.  Garfield

---

[11] The Court notes that "TONDER" is defined as the Estate (Doc. #8, ¶ 48), and there is no claim that the Estate, or Mrs. Van Tonder as personal representation, made any misrepresentations to plaintiffs.

v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006); Fed. R. Civ. P. 9(b).  The only evidence currently in the record is a verification page attached to the end of plaintiffs' Motion.  (Doc. #10-1).[12]   In this one-page verification, Nadhi declares that, based on his personal knowledge and under penalty or prejudice: "I have read the foregoing Motion for Preliminary Injunction attached thereto, and the facts stated in it are true."  (Id.)  This one-page document does little to show that plaintiffs are entitled to the extraordinary relief sought.  See e.g., CS Bus. Sys., Inc. v. Schar, No. 5:17-CV-86-OC-PGBPRL, 2017 WL 1449683, at *2 (M.D. Fla. Mar. 31, 2017), report and recommendation adopted, No. 5:17-CV-86-OC-40PRL, 2017 WL 1426627 (M.D. Fla. Apr. 21, 2017) (recognizing a verification page fails to comply with procedural rules for moving for a preliminary injunction).

Plaintiffs' breach of fiduciary duty claim is based on the same alleged facts as the fraud claim.  (Doc. #12, pp. 12-13.)

---

[12] Plaintiffs do attach the allegedly forged Written Consent as evidence of fraud.  (Doc. #9-12).  Plaintiffs state that "[u]pon information and belief, Mr. Van Tonder forged NAHDI's signature without NAHDI's consent."  (Doc. #9, ¶ 28.)  This is not enough to carry plaintiffs' burden of persuasion.  See Touchston v. McDermott, 120 F. Supp. 2d 1055, 1059 (M.D. Fla. 2000), aff'd, 234 F.3d 1133 (11th Cir. 2000) (quoting 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (2d ed. 1995)) (""[W]hen the primary evidence introduced is an affidavit made on information and belief rather than on personal knowledge, it generally is considered insufficient to support a motion for preliminary injunction.'").

Plaintiffs again fail to cite anything in the record, or otherwise provide any evidence outside their naked allegations and one-page verification which could demonstrate a substantial likelihood of success on this claim.

Plaintiffs lastly rely on their conversion and constructive trust claims as a basis for equitable relief, which are based on the "approximate $5.95 million USD" transferred from plaintiffs to Mr. Van Tonder's personal bank account between 2013 and 2018. (Doc. #9, ¶ 33.) An essential element of both of these claims is that the property at issue—plaintiffs $5.95 million USD transferred over a five-year period—is specific and identifiable.[13]   Other than plaintiffs' naked assertions,

---

[13] For conversion claims, see, e.g., IberiaBank v. Coconut 41, LLC, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013), aff'd, 589 F. App'x 479 (11th Cir. 2014) (citations omitted) (Florida conversion claim for money requires "specific and identifiable money"); Hester v. Vision Airlines, Inc., No. 2:09-CV-0117-RLH-RJJ, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011) (applying Nevada law) (money may be basis of conversion claim "[w]here the money, or the specific amount of money, if identifiable").

For constructive trust claims, see, e.g., Finkelstein v. Se. Bank, N.A., 490 So. 2d 976, 983 (Fla. 3d DCA 1986) (""[I]t is well settled that Florida courts will impress property with a constructive trust only if the trust res is specific, identifiable property or if it can be clearly traced in assets of the defendant which are claimed by the party seeking such relief."); Danning v. Lum's, Inc., 86 Nev. 868, 871, 478 P.2d 166, 167 (1970) (affirming dismissal of complaint that failed to state a specific res upon which a constructive trust could be imposed).   See also Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002) (describing in dicta that property or money must "clearly be traced

plaintiffs provide zero evidence, such a bank transfer statements, demonstrating identifiable property.  Plaintiffs fail to carry their burden of showing a substantial likelihood of success on these claims.

####   (3)   Conclusion

Plaintiffs have not demonstrated the two most critical elements - a substantial likelihood of success and irreparable harm.  Given plaintiffs' failure to meet their burden, the Motion is denied.

Accordingly, it is now

**ORDERED:**

Plaintiffs' Motion for Preliminary Injunction (Doc. #9) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this   28th   day of February, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record

_____

to particular funds or property in the defendant's possession" to
form the basis of a constructive trust or equitable lien).