```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

OIL COM UGANDA and ISLAM
EDHA ABDALLAH NAHDI,

     Plaintiffs,

v.                                    Case No:   2:21-cv-916-JES-NPM

ESTATE OF BRUWER WESSEL VAN
TONDER,

     Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion for Preliminary Injunction (Doc. #35), to which plaintiffs responded (Doc. #38). For the reasons set forth, the motion is **DENIED**.

**I.**

**A.   Algae-X International Corporation (AXI)**

On January 18, 2013, plaintiff Oil Com Uganda (OCU), plaintiff Islam Edha Abdallah Nahdi (Mr. Nahdi) (collectively, plaintiffs), and decedent Bruwer Wessel Van Tonder (Mr. Van Tonder) executed a Shareholders Agreement for the ownership of AXI. (Doc. #9-2.) Mr. Nahdi signed the agreement on behalf of himself and OCU. (Id.) Mr. Nahdi was named President and a director of AXI; Mr. Van Tonder was named CEO and a director of AXI. It is undisputed that, on August 1, 2013, the ownership structure of AXI was the following:

51% to OCU, 9% to Mr. Nahdi, and 40% to Mr. Van Tonder. (Doc. #9, ¶¶ 14-15; Doc. #13, ¶¶ 14-15.)

### B. Actions taken by Mr. Van Tonder

Plaintiffs allege that, "between 2016 and 2017, Mr. Van Tonder represented to OCU and NAHDI that Chase Bank was requiring NAHDI's name to be removed from the AXI corporate bank accounts because he is a foreign national and because he is Muslim," and that OCU and Nahdi needed to be removed "from public corporate records and as a signatory to the bank account so Chase Bank would continue doing business with AXI." (Doc. #5, ¶¶ 19-20.) Plaintiffs admit that they agreed to be removed from the bank account and public records, however, contend that they only agreed if they would maintain their same ownership interest in AXI. (Id. ¶¶ 23, 25.)

On October 1, 2017, Mr. Van Tonder executed a Unanimous Written Consent of the Board of Directors of AXI International ("Written Consent"), which removed Mr. Nahdi from the board of directors and terminated Mr. Nadhi's power in the company. (Id. ¶ 27; Doc. #5-11.) The Written Consent authorized Mr. Van Tonder and Michael Campbell (Mr. Campbell), Chief Financial Officer and Secretary of AXI, to "take any and all necessary actions to effectuate this resolution." (Doc. #5-11). Although there is a signature from "Nahdi" on the Written Consent, plaintiffs contend that the signature is a forgery. (Doc. #5, ¶ 30.)

2

After the Written Consent was executed, plaintiffs allege that Mr. Van Tonder "caused a new corporate book to be created," "removed the original share certificates," and "had a brand new share certificate issued showing newly issued 200,000 shares (full ownership) of AXI to him alone."  (Doc. #5, ¶ 32.)  Tax documents after 2018 support this allegation, showing Mr. Van Tonder as 100% owner of AXI.  (Docs. ## 5-13, 5-14.)

Throughout this time, from 2013 when the parties purchased AXI to 2018, plaintiffs transferred approximately $5 million USD to Mr. Van Tonder's personal bank account for investment into AXI.  (See Doc. #38, Exhibit B.)  According to plaintiffs, instead of investing all the money into AXI, Mr. Van Tonder used some of the money for personal expenses.  (See id., Exhibits C, D.)

**C.   Mr. Van Tonder's Death**

On September 26, 2021, Mr. Van Tonder committed suicide. Relevant to this case, Mr. Van Tonder's will provided:

> In the case of my death, I wish the following:
>
> That Islam Edha Abdallah Nahdi inherit AXI International Corporation on the following conditions.
>
> -That my spouse, Michelle Marie Van Tonder, must be paid 2 million dollars.
>
> -AXI International must pay her a salary of $120,000.00 every year for a total of five years including healthcare.
>
> -My home on, 3371 Brantley Oaks Drive, Fort Myers Florida, 33905, must be paid off in full

> between Islam Edha Abdallah and my loan account in AXI International Corporation.
>
> -The Mercedes G 63AMG will go to my spouse, Michelle Marie Van Tonder.
>
> -Whenever AXI International gets sold, 10% of purchase price is to be paid to my spouse, Michelle Marie Van Tonder.

(Doc. #9-16, p. 7.)  The will was signed on March 11, 2020 and witnessed by Mr. Campbell and Camille Henry, another person associated with AXI.  (Id. pp. 5-7.)

### D. After Mr. Van Tonder's Death & Current Litigation

Plaintiffs maintain that they discovered Mr. Van Tonder's alleged fraudulent takeover of AXI after his death.  Since his death, the parties have engaged in contentious disagreement over the ownership and governance of AXI.  The following has occurred:

| December 7, 2021 | Plaintiffs initiate the action against defendant the Estate of Bruwer Wessel Van Tonder (Estate). (Doc. #1). |
|---|---|
| December 10, 2021 | Mr. Van Tonder's will is admitted to the Lee County Circuit Court Probate Division, and Michelle Marie Van Tonder (Mrs. Van Tonder) is appointed as personal representative of the Estate. (Doc. #9-16.) |
| December 11, 2021 | Plaintiffs file the operative Amended Complaint. (Doc. #5.)[1] |
| January 3, 2022 | Mrs. Van Tonder executes a shareholder's resolution, as personal representative of the |

---

[1] On July 21, 2022, plaintiffs filed an opposed and amended motion for leave to amend the complaint, which motion remains pending before the Magistrate Judge.  (Doc. #40.)

4

| | |
|---|---|
| | Estate, which appoints Mrs. Van Tonder as president of AXI. (Doc. #35-1.) |
| January 19, 2022 | Plaintiffs execute a similar resolution, naming Mr. Nahdi as president and asserting OCU and Mr. Nahdi's 60% ownership interest in AXI. (Doc. #35-3.) |
| January 20, 2022 | Plaintiffs' counsel sends the resolution to Weiss Serota Helfman Cole & Bierman, corporate counsel for AXI (Corporate Counsel), and instructs Corporate Counsel that defendant's resolution "should have no effect whatsoever" because it misidentifies AXI as a Florida corporation (instead of a Nevada corporation). (Doc. #14-1, p. 3.) |
| January 21, 2022 | Corporate Counsel sends Mr. Nadhi's resolution to defendant's counsel and informs defendant's counsel that he instructed Mr. Campbell to revoke Mrs. Van Tonder's resolution and enforce Mr. Nahdi's resolution. (Id.) |
| January 24, 2022 | Mrs. Van Tonder, as personal representative of the Estate, executes another shareholder's resolution that is nearly identical to the January 3, 2022 resolution, but does not identify AXI as a Florida corporation. (Doc. #35-2.) |
| January 25, 2022 | Plaintiffs file their motion for preliminary injunction seeking to enjoin Mrs. Van Tonder from exercising any control over AXI, its finances, or its personnel. (Doc. #9.) |
| February 4, 2022 | Defendant's counsel emails Corporate Counsel, purporting to terminate Corporate Counsel's representation of AXI. (Doc. #16-1.) |
| February 11, 2022 | Defendant's counsel sends Mr. Campbell a notice of termination of his employment with AXI based on Mr. Campbell's: (1) refusal to recognize Mrs. Van Tonder's authority; (2) ignoring his past sworn statements and prior acknowledgements; and (3) unilaterally |

|  | recognizing and taking direction from a third party.  (Doc. #35-5 p. 1.) |
|---|---|
| February 14, 2022 | Plaintiffs' counsel sends Mr. Campbell and Christian Smith, AXI's Chief Operating Officer, a letter stating that plaintiffs "expressly authorize the continued retention of Mr. Campbell and any attempt to terminate him must be ignored."  (Doc. #35-5, p. 2.) |
| February 28, 2022 | The Court denies plaintiffs' motion for preliminary injunction.  (Doc. #18.) |
| March 3, 2022 | Following the Court's Order, defendant's counsel sends a letter to Mr. Campbell and Mr. Smith, again asserting control over AXI.  (Doc. #35-6.) |
| March 4, 2022 | Corporate Counsel responds to the letter, disputing Mrs. Van Tonder's "attempts to interfere with the day to day operations" and maintaining its position as corporate counsel for AXI. (Doc. #35-7.) |
| March 31, 2022 | Mr. Campbell files an annual report with the Florida Secretary of State, which names Mr. Nadhi as President, Mr. Campbell as CFO, and Mr. Smith as COO.  (Doc. #35-8.) |
| July 12, 2022 | Defendant files a motion for preliminary injunction seeking to enjoin plaintiffs from participation, involvement, or control of AXI, or disturbing defendant's shareholder resolution recognizing Mrs. Van Tonder as sole shareholder. (Doc. #35.) |

**II.**

**A.**

"The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held."  Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir.

6

2011) (citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)) (citations omitted).

"A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014) (citing Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001)). "The first two factors are 'the most critical.'" State of Fla. v. Dep't of Health & Hum. Servs., 19 F.4th 1271, 1279 (11th Cir. 2021) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)). Because the movant "must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms" the motion. Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1248 (11th Cir. 2016).

7

**B.**

1. **Irreparable Harm**

"Irreparable harm is the '*sine qua non* of injunctive relief.'" Oscar Ins. Co. of Fla. v. Blue Cross & Blue Shield of Fla., Inc., 360 F. Supp. 3d 1278, 1284 (M.D. Fla. 2019) (quoting Siegel, 234 F.3d at 1176). "Importantly, the possibility of an irreparable injury is not enough." State of Fla., 19 F.4th at 1279 (citing Winter v. NRDC, 555 U.S. 7 (2008) (explaining that issuing a preliminary injunction "based only on a possibility of irreparable harm" would be "inconsistent" with treating a preliminary injunction as a an "extraordinary remedy")). "[T]he asserted irreparable injury must be neither remote nor speculative, but actual and imminent." Siegel, 234 F.3d at 1176 (citations omitted).

Defendant claims that it will be irreparably harmed if plaintiffs are not enjoined from their participation, involvement, or control of AXI, or from disturbing defendant's shareholder resolution recognizing Mrs. Van Tonder as sole shareholder. (Doc. #35, p. 16.) Defendant claims that it has, and will continue to suffer irreparable harm because Mrs. Van Tonder, as personal representative of the Estate, "has lost any ability to manage, oversee, participate, or in any way direct the operations of AXI."

8

(Doc. #35, p. 14.)  Defendant further claims that plaintiffs' tactics have "barred any theoretical sale of" AXI.  (Id. p. 14.)[2]

Defendant's irreparable injuries are speculative.  Defendant has not shown that the day-to-day operations of AXI have or will be irreparably harmed absent giving Mrs. Van Tonder complete authority over AXI.  Any theoretical sale of AXI is just that – theoretical.  And, like the Court previously explained when denying plaintiffs' motion for preliminary injunction, assuming Mr. Nahdi is properly an officer of AXI, he owes a fiduciary duty to the corporation and its shareholders.  Chur v. Eighth Jud. Dist. Ct. in & for Cty. of Clark, 458 P.3d 336, 340 (Nev. 2020); In re Aqua Clear Techs., Inc., 361 B.R. 567, 575 (Bankr. S.D. Fla. 2007) (citing Cohen v. Hattaway, 595 So.2d 105 (Fla. 5th DCA 1992)).[3]  If Mr. Nahdi mismanages the company, defendant would be able to

---

[2] Defendant also claims that "plaintiffs have weaponized AXI by use of its corporate counsel to [] file a mirroring complaint for litigious strategy in Lee County, Circuit Court against The Estate and Michelle Van Tonder personally."  (Doc. #34, p. 14.)  Defendant provides no other details on this lawsuit, so it cannot support a showing of irreparable harm.

[3] Neither party discusses choice of law.  "The Florida Business Corporation Act provides that the internal affairs of a corporation are governed by the laws of the state of incorporation." Mukamal v. Bakes, 378 Fed. App'x. 890, 896 (11th Cir. 2010) (citing Fla. Stat. § 607.15015(3)).  AXI is a Nevada corporation and Nevada law may apply to one, some, or all claims.  However, because defendant fails to carry its burden for equitable relief, the Court makes no determination at this time what law applies to each claim.

seek compensatory damages against Mr. Nahdi for that mismanagement. Oscar Ins. Co., 360 F. Supp. 3d at 1284 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)) ("'The possibility that adequate compensatory ... relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'"). Defendant has not shown actual and imminent irreparable harm.

### 2. Substantial Likelihood of Success on the Merits

Plaintiffs' operative Amended Complaint asserts eight counts against defendant: (1) fraud; (2) breach of fiduciary duty; (3) conversion; (4) constructive trust; (5) unjust enrichment; (6) accounting; (7) permanent injunction; and (8) declaratory judgment. (Doc. #5.) Defendant's motion focuses on Counts I-IV.

Defendant argues that it is likely to succeed on the merits of plaintiffs' fraud claim because "[n]ot one written form or document exists to corroborate the allegations of fraud." (Doc. #35, p. 10.) Specifically, defendant cites plaintiffs' discovery responses, which verify that "no communications" (other than oral communications) exist which support plaintiffs' claims of fraud (or any other claim). (Id. p. 35; Doc. #35-12.) However, in response to defendant's motion, plaintiffs argue circumstantial evidence which could support the fraud claim, such as plaintiffs' continued investment of funds into AXI after the alleged fraud, which would not have occurred had they known of the alleged fraud.

10

(Doc. #38, p. 6.) Fraud claims are often based on circumstantial evidence. E.g., State Farm Mut. Auto. Ins. Co. v. Weiss, 410 F. Supp. 2d 1146, 1159 (M.D. Fla. 2006) (citations omitted) (denying motion for summary judgment due to circumstantial evidence). Although defendant may be successful at the end of the day, defendant has not carried its burden of showing a substantial likelihood of success on the fraud claim.

Defendant also argues that it is likely to succeed on the merits on plaintiffs' breach of fiduciary duty claim because "[n]o documents exist to demonstrate VAN TONDER misused any funds, that any funds actually received were for purposes of injection into AXI, nor that any agreements or oral assertions were made that if money was received by VAN TONDER that he agreed to use said funds for purposes alleged in the Amended Complaint." (Doc. #35, pp. 11-12.) However, in response to defendant's motion, plaintiffs provide checks from AXI to Mr. Van Tonder of varying amounts and which purport to show Mr. Van Tonder's misuse of corporate funds. (Doc. #38, Exs. C, D.) Although these may ultimately show no misuse of funds or no breach, defendant has not carried its burden of showing a substantial likelihood of success on the breach of fiduciary duty claim.

Defendant last argues that it is likely to succeed on plaintiffs' conversion and constructive trust claims because plaintiffs have not identified a specific and identifiable

11

property.[4] (Doc. #35, p. 12.) However, in response to defendant's motion, plaintiffs provide bank transfer statements which plaintiffs contend could adequately identify the specific property. (Doc. #38, Ex. B.) Defendant has not carried its burden of showing a substantial likelihood of success on the conversion and constructive trust claims.

### 3. Conclusion

Defendant's motion is premised in large part on what it believes should happen – Mrs. Van Tonder's recognized ownership and presidency of AXI - to maintain the status quo. To be sure, the Court previously acknowledged that, when construing the factual statements in plaintiffs' motion for preliminary injunction as true, the status quo since 2017 was Mr. Van Tonder's complete control over the company because plaintiffs agreed to be taken off the corporate record books and public records.

The status quo was then disrupted by Mr. Van Tonder's death, leading both parties to move for preliminary injunctions, two motions which sought the same relief: a merits determination by

---

[4] E.g., IberiaBank v. Coconut 41, LLC, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013), aff'd, 589 F. App'x 479 (11th Cir. 2014) (citations omitted) (Florida conversion claim for money requires "specific and identifiable money"); Finkelstein v. Se. Bank, N.A., 490 So. 2d 976, 983 (Fla. 3d DCA 1986) (""[I]t is well settled that Florida courts will impress property with a constructive trust only if the trust res is specific, identifiable property or if it can be clearly traced in assets of the defendant which are claimed by the party seeking such relief.").

the Court on who is the rightful, majority shareholder of AXI. Plaintiffs' motion failed because plaintiffs did not demonstrate the two most critical elements - a substantial likelihood of success on the merits and irreparable harm. Plaintiffs' motion failed in large part because plaintiffs showed no harm to the day-to-day operations of AXI, which could impact the value of company at the conclusion of the litigation and may warrant the extraordinary remedy of immediate equitable relief. Defendant's motion now similarly fails. When reaching this conclusion, the Court makes no determination on who is the rightful, majority owner. Nor is the Court making any determination on how the parties should proceed with the day-to-day operations of AXI during the course of the litigation.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Preliminary Injunction (Doc. #35) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __27th__ day of July, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

13