```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

OIL COM UGANDA and ISLAM
EDHA ABDALLAH NAHDI,

        Plaintiffs,

v.                                  Case No:  2:21-cv-916-JES-NPM

ESTATE OF BRUWER WESSEL VAN
TONDER,

        Defendant.
```

## OPINION AND ORDER

This case comes before the Court on Plaintiffs' Motion to Dismiss Counterclaim (Doc. #42) filed on July 27, 2022. Defendant filed a Response (Doc. #47) on August 9, 2022. For the reasons set forth the motion is **DENIED**.

**I.**

The Court previously described the underlying facts, continued dispute between the parties since the onset of the litigation, and procedural history when denying Defendant's Motion for Preliminary Injunction. (Doc. #41, pp. 1-6). Relevant to this Order is Defendant's Counterclaim. (Doc. #37, pp. 11-19.)[1]

---

[1] Unless otherwise noted, the Court cites to the paragraphs of the Counterclaim. (Doc. #37, pp. 11-19.)

As alleged in the Counterclaim: In 2012, decedent Bruwer Wessel Van Tonder (Mr. Van Tonder) and other investors sought to purchase AXI International Corporation (AXI), a fuel systems solutions company. (Id. ¶¶ 6-7). As of 2013, the ownership structure of AXI was the following: 51% to Plaintiff Oil Com Uganda (OCU), 9% to Plaintiff Islam Edha Abdallah Nahdi (Mr. Nahdi) (collectively, Plaintiffs), and 40% to Mr. Van Tonder. (Id. ¶ 9.) On October 1, 2017, Mr. Van Tonder and Mr. Nahdi executed a "Unanimous Written Consent of The Board of Directors of AXI," which terminated all power and authority previously exercised by OCU and Mr. Nahdi, and left Mr. Van Tonder with full control of AXI. (Id. ¶ 10). AXI then issued new share certificates showing Mr. Van Tonder as sole owner. (Id. ¶ 11). AXI's financial records from 2017 through 2021 and AXI's tax records from 2019 and 2020 further demonstrate, recognize, and represent Mr. Van Tonder as sole owner of AXI. (Id. ¶¶ 12-13).

Mr. Van Tonder passed away in late 2021. (Id. ¶ 14). Following Mr. Van Tonder's death, Plaintiffs initiated this lawsuit against Defendant the Estate of Bruwer Wessel Van Tonder (Defendant), alleging that Mr. Van Tonder fraudulently took over complete ownership and authority of AXI. (Doc. #5).

On January 19, 2022, Mr. Nahdi drafted a "Written Consent of the Majority of Shareholder of AXI International Corporation," (the Written Consent) which: (1) stated OCU was 51% owner and Mr.

Nahdi was 9% owner of AXI; (2) appointed Mr. Nahdi as President and CEO of AXI; and (3) provided that "without Mr. Nahdi['s] express written consent, no decisions other than the ordinary course of [AXI]'s business shall occur." (Doc. #37, ¶ 15; Doc. #37-1.) On January 24, 2022, Michelle Van Tonder (Mrs. Van Tonder), as personal representative of the Estate, executed a Shareholder's Resolution that affirmed Mrs. Van Tonder as sole shareholder and appointed her as President of AXI, assuming the role of her late husband, Mr. Van Tonder. (Doc. #37, ¶ 16; Doc. #37-2.)

Around March 4, 2022, AXI's purported corporate counsel refused to recognize Mrs. Van Tonder's ownership, relying on Mr. Nahdi's Written Consent. (Doc. #37, ¶ 20; Doc. #37-4.) On March 31, 2022, without Mrs. Van Tonder's knowledge or consent, AXI filed 2022 corporate documents naming Mr. Nahdi as president. (Doc. #37, ¶ 21; Doc. #37-5.)[2]

On July 17, 2022, Defendant filed the operative Amended Answer and Counterclaim, asserting three counterclaims against Plaintiffs: (1) fraud, arising from the Written Consent; (2) permanent injunction, seeking to enjoin Plaintiffs from asserting

---

[2] Since Mr. Nahdi's and Mrs. Van Tonder's conflicting documents and the commencement of the litigation, both parties sought preliminary relief to enjoin the opposing party from asserting control over AXI. (Doc. ## 9, 35.) Both motions were denied. (Doc. ## 18, 41.)

control over AXI; and (3) declaratory relief, seeking a declaration as to whether Plaintiffs have any ownership interest in AXI. (Doc. #37.) Plaintiffs now move to dismiss. (Doc. #42.)

## II.

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." Geter v. Galardi S. Enterprises, Inc., 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (quotation omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint or counterclaim must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept all factual allegations in a counterclaim as true and take

4

them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (quotations and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Fraud claims are subject to the heightened pleading requirements of Rule 9(b), which require a complaint "to state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006) (quotations omitted).

**III.**

**A.   Counterclaim I**

In Counterclaim I, Defendant asserts a fraud claim. (Doc. #37 ¶¶ 26-32.) Plaintiffs first argue this counterclaim should be dismissed for failure to state a claim.

"Under Florida law,[3] the elements of common law fraud are: (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." Yormak v. Yormak, No. 2:14-CV-33-FTM-29CM, 2015 WL 2365772, at *3 (M.D. Fla. May 18, 2015) (quotation and citations omitted).

Defendant maintains that Plaintiffs' Written Consent is the fraud. The Written Consent, incorporated into the Counterclaim (Doc. #37-1), particularly pleads Defendant's claim. Specifically, when taking the allegations of the Counterclaim in the light most favorable to Defendant, the Counterclaim alleges

---

[3] "In a diversity action such as this one, a federal court must apply the choice-of-law principles of the state in which it sits. Florida resolves conflict-of-laws questions according to the most significant relationship test outlined in the Restatement (Second) of Conflict of Laws." Michel v. NYP Holdings, Inc., 816 F.3d 686, 694 (11th Cir. 2016) (cleaned up). Based on the allegations of the Counterclaim, Florida has the most significant relationship to the parties' relationship and claims. Both parties also apply Florida law to the fraud claim.

6

that Mr. Nahdi, by executing the Written Consent on January 19, 2022, made a false statement of fact. (Doc. #37, ¶¶ 15, 26-27.) The Counterclaim alleges that Mr. Nahdi knew the representations made in the Written Consent were false at the time the representations were made. (Id. ¶¶ 26, 28.) The Counterclaim alleges that the Written Consent was executed to induce AXI, corporate counsel, and officers to recognize Plaintiffs as majority shareholders and Mr. Nahdi as President and CEO with control over AXI. (Id. ¶¶ 26, 29.) The Counterclaim alleges that AXI, corporate counsel, and officers have acted in reliance of the Written Consent and refused to recognize Defendant's purported rightful ownership and governance of AXI. (Id. ¶¶ 18-22, 26, 30.) Finally, the Counterclaim alleges that Defendant has suffered damages due to Plaintiffs' fraud because AXI "has been hijacked" from Defendant. (Id. ¶¶ 23, 26, 32.) Defendant has sufficiently pled its fraud claim.

Plaintiffs also argue that the fraud claim is barred by the Florida litigation privilege. "Florida's litigation privilege provides absolute immunity to statements or acts: (1) made or committed in judicial or quasi-judicial proceedings; and (2) 'connected with, or relevant or material to, the cause in hand or subject of inquiry.'" Diamond Resorts Int'l, Inc. v. Aaronson, 371 F. Supp. 3d 1088, 1110-11 (M.D. Fla. 2019) (quoting DelMonico v. Traynor, 116 So.3d 1205, 1212 (Fla. 2013)). The litigation

7

privilege's purpose [] is to protect courtroom speech and advocacy—the communicative tools lawyers, litigants, and witnesses use to search for the truth in our adversarial justice system." Arko Plumbing Corp. v. Rudd, 230 So. 3d 520, 525 (Fla. 3d DCA 2017).

"The mere existence of litigation does not attach the privilege to every communication; rather, the communication must be analyzed in light of its relation to the litigation." Diamond Resorts, 371 F. Supp. 3d at 1111 (cleaned up). "Florida courts have been reluctant to endorse a wholesale extension of the litigation privilege to those communications that have some relation to subsequent litigation." Id. Courts may consider the litigation privilege at the motion to dismiss stage when "the complaint affirmatively and clearly shows [its] conclusive applicability." Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1277 (11th Cir. 2005).

Plaintiffs argue that the litigation privilege applies to Defendant's fraud claim because the Written Consent was executed "during the ongoing judicial proceeding" and the Written Consent is "inherently related to" the underlying lawsuit because it "reiterates the position that Plaintiffs are taking in their lawsuit." (Doc. #42, pp. 10-11.) Defendant argues that "[t]o construe the privilege as [Plaintiffs] would permit, would be to chill any and all litigation that may arise from conduct a party

8

exhibits so long as a complaint has been filed by one party against the other first." (Doc. #47, p. 8.)

Plaintiffs have not demonstrated that the litigation privilege "affirmatively and clearly" applies to the fraud claim. Although the Written Consent was executed after the start of the proceedings, Plaintiffs' execution of the Written consent was not necessarily made in judicial proceedings or necessarily connected to the litigation. E.g., Braxton Techs., LLC v. Ernandes, No. 609CV804ORL28GJK, 2010 WL 11623673, at *4 (M.D. Fla. Apr. 22, 2010) (denying dismissal because letter may be "merely tangential" and court could not find, as a matter of law, letter was protected by litigation privilege). At this stage, dismissal pursuant to the litigation privilege is inappropriate. The motion to dismiss Counterclaim I is denied.

### B. Counterclaim II

In Counterclaim II, Defendant seeks a permanent injunction, enjoining Plaintiffs from asserting any control or "faux ownership" over AXI. (Doc. #37, p. 17.) Plaintiffs move to dismiss this counterclaim (Doc. #42, p. 11); however, Defendant represents to the Court that the parties conferred after the motion to dismiss was filed, and that Plaintiffs agreed to withdraw their arguments as to Counterclaim II (Doc. #47, p. 8). Accordingly, the motion to dismiss Counterclaim II is denied.

### C. Counterclaim III

In Counterclaim III, Defendant seeks declaratory relief, namely whether Plaintiffs have any ownership interest in AXI. (Doc. #37, p. 18.)  Plaintiffs argue this counterclaim should be dismissed because it does not serve a useful purpose and is redundant of Plaintiffs' cause of action for declaratory judgment, which seeks a declaration that Plaintiffs are majority shareholders of AXI.  (Doc. # 42, p. 12; Doc. #46, ¶¶ 88-91).  Defendant concedes that the claim is redundant, but maintains that the claim should remain because the determination of rightful ownership of AXI is "critical to all parties involved" and Defendant may be left without relief should Plaintiffs voluntarily dismiss any claims.  (Doc. #47, p. 9.)

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201. It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quotation and citations omitted).  Thus, the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005).  A district court is not required to exercise jurisdiction over a counterclaim requesting a

declaratory judgment if it will not serve a useful purpose, such as when the counterclaim is redundant of another claim or affirmative defenses. E.g., Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (citations omitted).  However, "[e]ven if the counterclaim were wholly redundant, this Court may exercise its discretion by not dismissing the counterclaim." Id. (citation omitted).  See also New Mkt. Realty 1L LLC v. Great Lakes Ins. SE, 341 F.R.D. 322, 327 (M.D. Fla. 2022) (quotation omitted) ("motions to dismiss made under Rule 12(b)(6) only test the validity of the claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid").

The Court exercises its discretion and will not dismiss Counterclaim III.  Even if it is redundant, Plaintiffs will suffer no prejudice in allowing the two claims for declaratory relief to proceed alongside each other. Id. (quoting Regions Bank v. Commonwealth Land Title Ins. Co., No. 11-23257-CIV, 2012 WL 5410609, at *5 (S.D. Fla. Nov. 6, 2012)) ("If, as plaintiff argues, the counterclaims are truly repetitious, then plaintiff will not have to expend much time on any additional discovery or briefing.")

Accordingly, it is now

**ORDERED**:

Plaintiffs' Motion to Dismiss Counterclaim (Doc. #43) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this __16th__ day of August, 2022.

_/s/ John E. Steele_
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

12